1   DARLENE C. VIGIL
State Bar No. 223442
2   BARRETT DAFFIN FRAPPIER
TREDER & WEISS, LLP
3   20955 Pathfinder Road, Suite 300
Diamond Bar, California 91765
4   (626) 915-5714 – Phone
(972) 661-7726 - Fax
5   File No. 1752906
sdcaecf@BDFGroup.com
6

7   Attorneys for Secured Creditor
HSBC BANK USA AS TRUSTEE FOR
8   LUMINENT 2006-3, ITS ASSIGNS
AND/OR SUCCESSORS IN INTEREST and
9   Respondent ONEWEST BANK, F.S.B.

10

11          UNITED STATES BANKRUPTCY COURT

12          SOUTHERN DISTRICT OF CALIFORNIA

| 13 | In re: | CASE NO.:   10-07643-LA-13 |
|----|--------|----------------------------|
| 14 | SANDALLO M. TELEBRICO, | CHAPTER:   13 |
| 15 | | |
| 16 | | |
| 17 | Debtor. | ONEWEST BANK, F.S.B.'S RESPONSE TO ORDER TO SHOW CAUSE |
| 18 | | |
| 19 | | Hearing: |
| 20 | | Date:   January 19, 2011 |
| 21 | | Time:   9:30 a.m. |
| 22 | | Dept.:   1 |
| 23 | | |

24

25

26

27

1
ONEWEST BANK, F.S.B.'S RESPONSE TO ORDER TO SHOW CAUSE - Page 1 of 17
/Southern/San Diego/00000001749894

1    Respondent ONEWEST BANK, F.S.B. submits the following Response to the Order to Show

2    Cause issued on November 18, 2010 in the above-entitled matter:

3    I.    STATEMENT OF FACTS AND PROCEDURAL HISTORY

4    OneWest Bank, F.S.B.  ("OneWest") is the loan servicing agent for Secured Creditor HSBC

5    Bank USA As Trustee for Luminent 2006-3 ("HSBC"), the holder of a secured claim encumbering

6    Debtor's residential property commonly known as 9261 Longridge Way, San Diego, California 92126

7    ("Property").   On or about January 31, 2006, Debtor Sandallo Telebrico ("Debtor") entered into a

8    secured loan transaction encumbering the Property in the principal amount of $590,000.000.  The

9    loan transaction is evidenced by a Deed of Trust executed by Debtor on January 31, 2006, and

10    recorded on February 6, 2006, in the Official Records of San Diego County as Instrument No. 2006-

11    0088043.[1]

12

13    The Deed of Trust secures the Debtor's repayment obligations under an adjustable rate note in

14    the original sum of $590,000.00 with an unpaid balance of $698,572.34 as of November 23, 2009.[2]

15    Commencing in January, 2009, Debtor failed to pay as agreed under the terms of the loan

16    transaction.[3]  Due to Debtor's failure to pay as agreed, in July, 2009, HSBC commenced non-judicial

17    foreclosure proceedings against the Property.  On July 14, 2009, a Notice of Default was recorded as

18    Document No. 0384742 in the Official Records of San Diego, California. [4]

19

20    ///

21    ///

22    ///

23    ///

24    

---

[1] See, Declaration of OneWest Bank, F.S.B. in Response to Order to Show Cause filed concurrently herewith ("OneWest Decl."), Exhibit "2."
[2] See, Declaration of Darlene C. Vigil in Response to Order to Show Cause filed concurrently herewith ("Vigil Decl."), Exhibit "16."
[3] See, OneWest Decl., ¶ 5.

A.    LOAN MODIFICATION REVIEW

On January 26, 2009, Debtor contacted OneWest advising that he could not make the monthly payments on the Loan Transaction and requesting lower monthly payments.[5]  Debtor also inquired of possible modification.  In response, OneWest advised Debtor that no modification was available.[6]

On May 18, 2009, OneWest received a message advising that Ben Clanor ("Clanor") was authorized to speak with OneWest regarding Debtor's account.[7]  On May 18, 2009, Ben Clanor contacted OneWest regarding HAMP or other related workout options.[8]   In response, on May 20, 2009, OneWest sent correspondence in connection with loss mitigation options.[9]    Subsequent thereto, on June 8, 2009, Clanor contacted OneWest regarding HAMP or other related workout options.  In response, OneWest sent to Clanor a HAMP packet.[10]

On June 28, 2009, OneWest received a loan modification application from Debtor attaching the following documents: a Hardship Affidavit, Request for Transcript of Tax Return (Form 4506-T) for the years ending December 31, 2007 and December 31, 2008, Notice of Amended Unemployment Insurance Award, copy of a MoneyGram and check number 514 payable to Sandallo Telebrico in the amount of $500.00 from Xiaozung Chen with a notation regarding rent for June (the "June 12, 2009 Documents").[11]

On July 15, 2009, Clanor contacted OneWest inquiring as to the status of the loan modification review.[12]   In response, OneWest advised Clanor that unemployment compensation

---

[4] See, OneWest, Decl. ¶ 12.
[5] See, OneWest Decl. ¶ 6.
[6] *Id.*.
[7] See, OneWest Decl. ¶ 8.
[8] See, OneWest Decl. ¶ 9.
[9] *Id.*
[10] See, OneWest Decl. ¶ 10.
[11] See, OneWest Decl. ¶ 11, Exhibit "4."
[12] See, OneWest Decl. ¶ 13.

ONEWEST BANK, F.S.B.'S RESPONSE TO ORDER TO SHOW CAUSE - Page 3 of 17
/Southern/San Diego/00000001749894

could not be considered a qualifying income source for loan modification purposes and that copies of a written rental agreement along with two recent rent checks were needed to verify rental income.[13]

On July 22, 2009, OneWest received additional documentation from Debtor to continue processing the loan modification request (the "July 22, 2009 Documents").[14]  On July 27, 2009 and July 29, 2009, BGC Realty, as authorized agent for Debtor ("BGC"), contacted OneWest to ascertain the status of the loan modification review.[15]  On both occasions, OneWest advised that the documentation was under review.[16]  On August 6, 2009, OneWest advised BGC that Debtors documents were under review and the turnaround time was 30-60 days.[17]

On October 5, 2009, Debtor contacted OneWest in connection with the loan modification review.[18]  At that time, OneWest responded that there was an excessive loan obligation, no loan modification agreement was in place and all workout procedures, including a loan modification must be handled through the Debtor's bankruptcy which was filed on August 4, 2009. [19]

On October 23, 2009, OneWest sent correspondence to Debtor advising that due to the active status of the bankruptcy, all workout procedures, including a loan modification, must be handled through Debtor's bankruptcy proceedings (the "October 23, 2009 Correspondence").[20]  At that time, OneWest was not reviewing accounts in bankruptcy for modification.[21]

---

[13] *Id.*

[14] See, OneWest Decl. ¶ 14, Exhibit "5."
[15] See, OneWest Decl. ¶ 15.
[16] *Id.*
[17] See, OneWest Decl. ¶ 17.
[18] See, OneWest Decl. ¶ 19.
[19] *Id.*
[20] See, OneWest Decl. ¶ 21, Exhibit "6."
[21] *Id.*

On November 24, 2009, OneWest received from Debtor a new modification application, including: an Information Worksheet, Income Verification, Notice of Amended Unemployment Insurance Award, copies of correspondence to Sandallo Telebrico from the Social Security Administration, Residential Lease between Jose Montoya and Sandallo Telebrico dated July 1, 2009, alleged rental receipts for September, 2009 through November 2009, copies of MoneyGrams and check numbers 514, 517, 518 each payable to Sandallo Telebrico in the amount of $500.00 from Xiaozung Chen with a notation regarding rent and two utility bills (the "November 24, 2009 Documents").[22]

On November 30, 2009, Debtor's loan modification documents were reviewed.[23] At that time, OneWest determined that the Debtor's paperwork was incomplete and the following documents were needed: Debtor's 2008 federal tax return with all schedules attached and authenticated, most recent two months bank statements, a completed IRS Form 4506-T. [24] Despite the Court's findings that Debtor's counsel mailed and faxed a loan modification package that was complete and contained all necessary items requested by the Bank's form package, OneWest's records do not show that it received a complete package.[25]

On December 1, 2009, OneWest sent correspondence to Debtor advising of the need for the additional documents.[26] According to OneWest's records, it did not receive any of the requested

---

[22]See, OneWest Decl. ¶ 22, Exhibit "7."
[23] See, OneWest Decl. ¶ 23.
[24] _Id._
[25] _Id._
[26] See, OneWest Decl. ¶ 24, Exhibit "8."

additional documents in response to OneWest's December 1, 2009 correspondence so the loan modification review was closed.[27]

On March 8, 2010, in response to counsel's request for status of Debtor's loan modification, OneWest advised that in November, 2009, Debtor submitted a HAMP loan modification packet; however, Debtor only submitted a partial packet.[28]  OneWest also advised that Debtor did not provide the missing items and, as a result, the loan modification review was closed and a loan modification was not under review.[29]    OneWest also forwarded to counsel a copy of the December 1, 2009 correspondence sent to Debtor.[30]

On March 18, 2010, OneWest received written authorization allowing for Mortazavi & Associates to discuss Debtor's account with OneWest.  On April 14, 2010, Debtor contacted OneWest regarding loan modification or other related workout options.[31]  At that time, OneWest requested Debtor to have his attorney refax the HAMP documents.[32]

On April 22, 2010, Debtor submitted a new application for loan modification, including:  an Information Worksheet, Income Verification, unemployment benefit check stubs for L. Telebrico, bank statement from North Island Credit Union dated March 15, 2010, copies of correspondence to Sandallo Telebrico from the Social Security Administration, Residential Lease between Fidelia Luna and Sandallo Telebrico dated January 1, 2009, alleged rent check dated February 1, 2010 and payable to Sandallo Telebrico in the amount of $490.00, Debtor's 2009 IRS Tax Return, 2009 W-2 Earnings Summaries for Lealine Telebrico (the "April 22, 2010  Documents").[33]

---

[27] *Id.*
[28] See, OneWest Decl. ¶ 25.
[29] *Id.*
[30] *Id.*
[31] See, OneWest Decl. ¶ 28.
[32] *Id.*

[33] See, OneWest Decl. ¶ 29, Exhibit "9."

On April 26, 2010, Debtor contacted OneWest regarding the loan modification paperwork. At that time, OneWest advised that updated financials were needed.[34]    On April 28, 2010, OneWest sent correspondence to Debtor requesting the following additional documents for review in connection with his request for loan modification:  a complete Hardship Affidavit; two recent bank statements and a current rental agreement.[35]

On April 29, 2010, OneWest received additional loan modification paperwork from Debtor, including:  a Hardship Affidavit, bank statements from North Island Credit Union dated March 15, 2010 and April 15, 2010, copy of a Residential Lease between Fidelia Luna and Sandallo Telebrico dated December 1, 2009, alleged rent receipts from Fidelia Luna for November 1, 2009 through March 1, 2010 each in the amount of $1,500.00 (the "April 29, 2010  Documents").[36]

On May 5, 2010, OneWest sent correspondence to Debtor requesting the following additional documents for review in connection with his request for loan modification:  a completed and signed Hardship Explanation.[37]

On May 10, 2010, Debtor contacted OneWest inquiring about loan modification documents letter. [38]   Nine days later, on May 19, 2010, Debtor contacted OneWest inquring about status of loan modification review.[39]   At that time, OneWest advised that the documents were in the process of being reviewed.[40]

On June 2, 2010, OneWest sent correspondence to Debtor requesting the following additional documents for review in connection with his request for loan modification:  two most recent bank

---

[34] See, OneWest Decl. ¶ 30.

[35] See, OneWest Decl. ¶ 31, Exhibit "10."

[36] See, OneWest Decl. ¶ 32, Exhibit "11."

[37]See, OneWest Decl. ¶ 34, Exhibit "12."

[38] See, OneWest Decl. ¶ 35.

[39] See, OneWest Decl. ¶ 37.

statements, current rental agreement and two most recent paystubs or Profit and Loss Statement, and, if rental income is used to qualify, the most recent signed tax return.[41]   On July 12, 2010, Debtor contacted OneWest inquiring about the status of the loan modification review.[42]   At that time, OneWest advised Debtor of the additional documents required and missing / rejected documents.[43]

To date, OneWest has not received another loan modification application from Debtor.[44]

B.      THE FIRST BANKRUPTCY

On August 4, 2009, Debtor filed a voluntary petition under Chapter 13 of the United States Bankruptcy Code, United States Bankruptcy Court, Southern District of California, Case No. 09-11533-LA13 (the "First Bankruptcy").   On September 14, 2009, at the request of OneWest, and after review of the chain of title and loan documents, including the payment history, loan history, delinquency status and the documents filed in the First Bankruptcy, including Debtor's Schedules and proposed Plan, Barrett Daffin Frappier Treder & Weiss, LLP ("Firm") filed an Objection to Debtor's Plan based upon feasibility issues and the Plan's understatement of the arrearages owing to HSBC (the "First Objection").[45]   The hearing on the First Objection was scheduled for October 14, 2009.

Prior to the October 14, 2009 hearing, counsel for Debtor and OneWest met and conferred.   At that time, Debtor's counsel indicated that Debtor was to file additional documents to remedy HSBC's objections.   Based thereon, the parties agreed to continue the hearing on HSBC's objection to allow Debtor time to file those necessary documents to remedy HSBC's objection and complete the 341a.   At the time counsel met and conferred, no indication was made by Debtor's counsel that a loan

---

[40] *Id.*
[41] See, OneWest Decl. ¶ 38, Exhibit "13."
[42] See, OneWest Decl. ¶ 40.
[43] *Id.*
[44] See, OneWest Decl. ¶ 43.
[45] See, Vigil Decl. ¶¶ 5-6, Exhibit "14."

1  modification was submitted or under review.[46]   The hearing on the First Objection was continued to

2  February 3, 2010.

3      On January 21, 2010, at the request of OneWest, and after a review of the chain of title and

4  loan documents, including the payment history, loan history, and loan status, the Firm filed a Motion for

5  Relief from the Automatic Stay in the First Bankruptcy (the "First Motion").[47] The Declaration in

6  Support of the First Motion at Page 3, Paragraph 7 reflects that Debtor failed to pay any post-petition

7  payments since the filing of the First Bankruptcy for the months of September, 2009 through and

8  including November 1, 2009. [48]

9      On January 29, 2010, counsel for Debtor and OneWest met and conferred in connection with the

10  continued hearing on the First Objection. [49]   At that time, Debtor's counsel indicated that Debtor was

11  submitting loan modification paperwork which, if approved, would provide for the cure of the arrearages

12  due and owing to HSBC.[50]   Debtor's counsel requested a continuance of the hearing on the First

13  Objection to allow Debtor time to submit the loan modification paperwork. [51]   The parties agreed to

14  continue the hearing on the First Objection to March 17, 2010.

15      On February 4, 2010, Debtor filed Opposition to the First Motion.[52]   The Opposition alleged that

16  a loan modification was in the final review process.[53]   The Opposition did not dispute the post-petition

17  delinquency.[54]   The hearing on the First Motion was scheduled for February 16, 2010.

18      At the February 16, 2010 hearing, the court ordered counsel for HSBC to file a status report

19  indicating the status of Debtor's loan modification.[55]   To ascertain the status of Debtor's loan

---

[46] See, Vigil Decl. ¶ 9.
[47] See, Vigil Decl. ¶ 14, Exhibit "16."
[48] See, Exhibit "16."
[49] See, Vigil Decl. ¶ 16.
[50] Id.
[51] Id.
[52] See, Vigil Decl. ¶ 10, Exhibit "19."
[53] See, Exhibit "19."
[54] Id.

modification, counsel contacted OneWest requesting the status of Debtor's loan modification.[56]    In response, on March 8, 2010, OneWest advised that in November, 2009, Debtor submitted a HAMP loan modification packet; however, Debtor only submitted a partial packet.[57]    At that time, OneWest also advised that correspondence dated December 1, 2009 was sent to Debtor requesting Debtor to provide the missing items (the "December 1, 2009 Correspondence"). [58]    OneWest also forwarded to counsel a copy of the December 1, 2009 Correspondence.[59]    OneWest also advised that Debtor did not provide the missing items and, as a result, the loan modification review was closed and a loan modification was not under review.[60]

On March 10, 2010, a Status Report re Status of Debtor's Loan Modification Review was filed in the First Bankruptcy apprising the Court of the Status of Debtor's loan modification as reported by OneWest in response to counsel's inquiry ("the Status Report").[61]

On March 17, 2010, the Court sustained HSBC's First Objection and dismissed the First Bankruptcy.

C.    THE SECOND BANKRUPTCY

On May 3, 2010, the instant Chapter 13 bankruptcy petition was filed by Debtor (the "Second Bankruptcy").    On June 21, 2010, at the request of OneWest, and after review of the chain of title and loan documents, including the payment history, loan history, delinquency status and the documents filed in the Second Bankruptcy, including Debtor's Schedules and proposed Plan, the Firm filed an Objection to Debtor's Plan based upon feasibility issues and the Plan's understatement of the arrearages owing to

---

[55] See, Vigil Decl. ¶ 22.
[56] See, Vigil Decl. ¶ 23.
[57] See, Vigil Decl. ¶ 24.
[58] *Id.*
[59] *Id.*
[60] *Id.*
[61] See, Vigil Decl. ¶ 25, Exhibit "20."

HSBC (the "Second Objection"). [62]    The hearing on the Second Objection was scheduled for July 21, 2010.

On July 12, 2010 and July 19, 2010, counsel for OneWest telephoned and left voicemail messages for Debtor's counsel Marjan Mortazavi to meet and confer in connection with the Second Objection.[63]    On July 19, 2010, Debtor's counsel left a voicemail message requesting a continuance of the hearing on the Second Objection to allow Debtor time to submit loan modification paperwork. [64] Upon receipt of Debtor's counsel voicemail message, counsel for OneWest prepared and filed a Statement of Objection Status advising the Court of the meet and confer efforts and decline of Debtor's request for a continuance of the hearing on the Second Objection.[65]    The Statement of Objection apprised the Court of the previously dismissed First Bankruptcy, feasibility issues raised by HSBC in the First Bankruptcy, and HSBC's agreement to two continuances of the hearing on the First Objection to allow Debtor time to complete a possible loan modification. [66] The Statement of Objection also set forth that on March 10, 2010 the Court in the First Bankruptcy was advised of OneWest's response that no loan modification was under review. [67]

After the filing of the Statement of Objection, on July 20, 2010, Debtor's counsel filed the Declaration of Marjan Mortazavi re: Meet and Confer With Creditor in the Second Bankruptcy ("Debtor's Meet and Confer").[68]    Debtor's Meet and Confer at Paragraph 3 set forth that Debtor submitted a loan modification package two times in April, 2010 and had not received any substantive update from the creditor's loss mitigation department.[69]    Debtor's Meet and Confer at Paragraph 5 also set forth Debtor's request that he learn something of the status of application before HSBC is permitted

---

[62] See, Vigil Decl. ¶¶ 5-6, Exhibit "21."
[63] See, Vigil Decl. ¶ 33.
[64] *Id.*
[65] *Id.*, Exhibit "22."
[66] *Id.*
[67] *Id.*

1  to complete the foreclosure.[70]   These additional facts were not provided in the July 19, 2010 voicemail

2  message received by OneWest's counsel.[71]

3        On July 20, 2010, the Court continued the hearing on the Second Objection to October 27, 2010.

4  Subsequent to the filing of the Second Objection, the Firm received notice of this Court's October 5,

5  2010 Fixing Date for Evidentiary Hearing ("Evidentiary Hearing") in connection with OneWest's

6  Motion for Relief from the Automatic Stay filed on August 5, 2010 by Christopher J. Hoo of Randall S.

7  Miller & Associates, PC (the "Second Motion").   The Firm was not retained and did not represent

8  OneWest or HSBC in connection with the Second Motion.

9

10       The October 5, 2010 Order identified an issue for resolution at the Evidentiary Hearing was the

11 status of Debtor's loan modification.   Based upon the issues to be resolved regarding Debtor's loan

12 modification at the Evidentiary Hearing, the parties agreed to continue the hearing on the Second

13 Objection to be held concurrently with the Chapter 13 Trustee's Objection scheduled for December 22,

14 2010.[72]  On October 27, 2010, the Court continued the hearing on the Second Objection to December 22,

15 2010.

16

17       On November 15, 2010, the Evidentiary Hearing was held.  On November 15, 2010, the Court

18 denied OneWest's Second Motion and scheduled the instant Order to Show Cause.

19 II.   LAW AND ARGUMENT

20       A. THE FILING OF THE MOTION FOR RELIEF FROM THE AUTOMATIC STAY IN

21          THE FIRST BANKRUPTCY WAS NOT A VIOLATION OF THE HOME

22          MODIFICATION PROGRAM

23       On April 6, 2009, the United States Department of the Treasury issued Supplemental

24

25

---

26  [68] See, Vigil Decl. ¶ 35, Exhibit "23."
    [69] See, Exhibit "23."
27  [70] *Id.*
    [71] See, Vigil Decl. ¶ 37.

Directive 09-01 entitled *Introduction of the Home Affordable Modification Program* in connection

with the Home Affordable Modification Program ("HAMP") ("Supplemental Directive 09-01").[73]

Supplemental Directive 09-01 at Page 14 provides:

> "Temporary Suspension of Foreclosure Proceedings
>
> To ensure that a borrower currently at risk of foreclosure has the opportunity to apply for the HAMP, servicers should not proceed with a foreclosure sale until the borrower has been evaluated for the program and, if eligible, an offer to participate in the HAMP has been made. Servicers must use reasonable efforts to contact borrowers facing foreclosure to determine their eligibility for the HAMP, including in-person contacts at the servicers' discretion.  Servicers must not conduct foreclosure sales on loans previously referred to foreclosure or refer new loans to foreclosure during the 30-day period that the borrower has to submit documents evidencing an intent to accept the Trial Period Plan offer."

On March 24, 2010, the United States Department of the Treasury issued Supplemental

Directive 10-02 entitled *Home Affordable Modification Program – Borrower Outreach and

Communication* in connection with HAMP ("Supplemental Directive 10-02").[74]  Supplemental

Directive 10-02 at Page 4 provides:

> "Foreclosure Actions
>
>  The following guidance replaces in its entirety the guidance set forth on page 14 of Supplemental Directive 09-01 under the heading `Temporary Suspension of Foreclosure Proceedings'.
>
> Prohibition on Referral and Sale
>
> A servicer may not refer any loan to foreclosure or conduct a scheduled foreclosure sale *unless* and *until* at least one of the following circumstances exists:
>
> · The Borrower is evaluated for HAMP and is determined to be ineligible for the program; or
>
> · The borrower is offered a trial period plan, but fails to make a trial period payment by

---

[72] See, Vigil Decl. ¶ 42.
[73] See, Request for Judicial Notice in Response to Order to Show Cause filed concurrently herewith ("RJN"), Exhibit "25".
[74] See, RJN, Exhibit "26."

the last day of the month in which such payment is due; or

· The servicer has established right party contact, has sent at least two written requests asking the borrower to supply required information in accordance with this Supplemental Directive and has otherwise satisfied the Reasonable Effort solicitation standard, and the  borrower failed to respond by the dates indicated in those requests; or

· The servicer has satisfied the Reasonable Effort solicitation standard without establishing right party contact; or

· The borrower or co-borrower states he or she is not interested in pursuing a HAMP modification and such statement is reflected by the servicer in their servicing system."

In issuing the Order to Show Cause, this Court raised its concern that the filing of the Motion for Relief from the Automatic Stay in the First Bankruptcy may have been in violation of the Home Affordable Modification Program.  The First Motion was filed on January 21, 2010 and continued to March 17, 2010.  At the March 17, 2010 hearing, the First Bankruptcy was dismissed.  At the time the First Motion was filed through the March 17, 2010 hearing, Supplemental Directive 09-01 was in effect.  Approximately one week later, on March 24, 2010, Supplemental Directive 10-02 was issued providing additional guidelines including those cited in the Order to Show Cause.  Supplemental Directive 10-02 does not reflect that the additional guidelines are to be applied retroactively.  OneWest respectfully submits that the filing of the First Motion did not violate the Home Affordable Modification Program or the effective guidelines.


B.  THERE IS NO BASIS FOR THE COURT TO IMPOSE SANCTIONS:

Rule 9011(b) of the Federal Rules of Bankruptcy Procedure states, in part, as follows:

**(b)  Representations to the Court**.  By presenting to the court (whether by signing, filing, submitting, or later advocating) a petition, pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,

(1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;

(2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification or reversal of existing law or the establishment of new law;

(3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery

Rule 9011(c) of the Federal Rules of Bankruptcy Procedure states, in part, as follows:

**(c)  Sanctions.**  If, after notice and a reasonable opportunity to respond, the court determines that subdivision (b) has been violated, the court may, subject to the conditions stated below, impose an appropriate sanction upon the attorneys, law firms or parties that have violated subdivision (b) or are responsible for the violation.

**(1)  How Initiated.**
    **(B)  On the Court's Initiative.**  On its own initiative, the court may enter an order describing the specific conduct that appears to violate subdivision (b) and directing an attorney, law firm, or party to show cause why it has not violated subdivision (b) with respect thereto.

**(2)  Nature of Sanction; Limitations.**  Subject to the limitations in subparagraphs (A) and (B), the sanction may consist of, or include, directives of a nonmonetary nature, an order to pay a penalty into court, or if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of some or all of the reasonable attorneys' fees and other expenses incurred as a direct result of the violation…
    **(A)**  Monetary sanctions may not be awarded against a represented party for a violation of subdivision (b)(2).
    **(B)**  Monetary sanctions may not be awarded on the court's initiative unless the court issues its order to show cause before a voluntary dismissal or settlement of the claims made by or against the party which is, or whose attorneys are, to be sanctioned.

Because of the potentially chilling effect on innovative lawyering, sanctions are reserved "for the rare and exceptional case where the action is clearly frivolous, legally unreasonable or without legal foundation, or brought for an improper purpose." [75] In addition, before imposing sanctions

---

[75] *Operating Engineers Pension Trust v. A-C Co.*, 859 F.2d 1336, 1344 (9th Cir. 1988).

1

2

3

4

5

6

under either Federal Rules of Bankruptcy Procedure, Rule 9011 or the Court's inherent authority under 11 U.S.C. § 105(a), a court must make an explicit finding of bad faith or willful misconduct.[76] With regard to the inherent sanction authority, bad faith or willful misconduct consists of something more egregious than mere negligence or recklessness.[77]   A bankruptcy court should not sanction a creditor who brings a colorable motion under Rule 9011 against the debtor.[78]

7

8

9

10

11

12

13

14

15

16

17

As set forth in the Declaration of OneWest Bank, F.S.B. filed concurrently herewith, despite the Court's findings that Debtor's counsel mailed and faxed a loan modification package that was complete and contained all necessary items requested by the Bank's form package, OneWest's records do not show that OneWest received a complete package.  Further, according to OneWest's records, OneWest did not receive any of the requested additional documents in response to OneWest's December 1, 2009 correspondence.  As a result, the loan modification review was closed. Subsequent to the dismissal of the First Bankruptcy, OneWest received additional loan modification paperwork from Debtor which, according to OneWest's records, was also incomplete. OneWest's records' reflect that, to date, OneWest has not received another loan application or additional documents from Debtor since June 3, 2010.

18

19

20

21

22

Debtor does not dispute the validity of the underlying loan obligation or the delinquency. OneWest respectfully submits that based upon Debtor's delinquency and review of the documents and communications contained in OneWest's file, the pleadings filed in both the First and Second Bankruptcy were filed in good faith and for a proper purpose.

23

III.   <u>CONCLUSION</u>

24

25

For all of the reasons discussed above and set forth in the Declarations of OneWest Bank, F.S.B and Darlene C. Vigil in Response to the Order to Show Case filed concurrently herewith,

26

27

---

[76] *In re Dyer* , 322 F.3d 1178, 1196 (9th Cir. 2003)

[77] <u>*Id*</u>.

ONEWEST BANK, F.S.B.'S RESPONSE TO ORDER TO SHOW CAUSE - Page 16 of 17

/Southern/San Diego/00000001749894

1  Respondent OneWest Bank, F.S.B. respectfully requests that the Order to Show Cause be discharged.

2  In both the First and Second Bankruptcy, each representation made to this Court was made in good

3  faith, based upon the knowledge, information and belief formed after inquiry and review of the

4  documents and communications contained in OneWest's file.

5

6                          BARRETT DAFFIN FRAPPIER TREDER & WEISS, LLP

7

8  Dated:  January 12, 2011        By:     _/s/ Darlene C. Vigil_____
                                           Darlene C. Vigil, Attorneys for Secured Creditor
9                                          HSBC BANK USA AS TRUSTEE FOR LUMINENT 2006-3,
                                           ITS ASSIGNS AND/OR SUCCESSORS IN INTEREST and
10                                         Respondent ONEWEST BANK, F.S.B.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

---

[78] *In re Russ*, 187 F.3d 978 (8th Cir. 1999)

CERTIFICATION OF SERVICE

I, Darlene C. Vigil the undersigned, whose address appears below, certify:

That I am at all times hereinafter mentioned was, over the age of eighteen and not a party to this bankruptcy case or adversary proceeding.  My business address is:  20955 Pathfinder Road, Diamond Bar, California 91765.

That on January 12, 2011, I caused to be served a true copy of OneWest Bank, F.S.B.'s Response to Order to Show Cause on all interested parties in said case, by placing a true copy thereof in a sealed envelope in the United States mail first class, postage prepaid, and/or with an overnight mail service addressed and/or by NEF notice as follows:

SEE ATTACHED SERVICE LIST.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

DATE: January 12, 2011                    By:    /s/ Darlene C. Vigil_____
                                                  DARLENE C. VIGIL

1

## SERVICE LIST

2

3
**BY US FIRST CLASS MAIL:**

4
**DEBTOR**
SANDALLO M. TELEBRICO

5
9261 Longridge Way
San Diego, CA 92126

6

7
**DEBTOR'S ATTORNEY**
MARJAN MORTAZAVI

8
MORTAZAVI & ASSOCIATES
501 West Broadway, Suite 510

9
San Diego, CA 92101

10
**CHAPTER 13 TRUSTEE**
THOMAS H. BILLINGSLEA

11
530 B Street, Ste. 1500
San Diego, CA 92101

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CERTIFICATION OF SERVICE